UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC X. RAMBERT, | : | CIVIL ACTION NO. 3:CV-11-1370 |
| a/k/a/ IMAN KHALIL, | : | |
| a/k/a WALI.ALLAH | : | |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | **FILED** |
| | : | **SCRANTON** |
| ROBERT SHANNON, et al., | : | |
| | : | AUG 0 1 2012 |
| Respondents | : | |

PER _M. b. P._
DEPUTY CLERK

## MEMORANDUM

Petitioner, Eric X. Rambert ("Rambert"), an inmate presently confined in the State

Correctional Institution, Coal Township, Pennsylvania, filed the above captioned petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rambert challenges the Department of

Corrections' ("DOC") calculation of his sentence, as well as the denial of his parole by the

Pennsylvania Board of Probation and Parole ("the Board"). (Doc. 7, Amended Petition).

Specifically, Petitioner states that "the DOC illegally aggregated [his] two separate sentences of

10-25 years & 6-25 years to a total of 16-50 years," as "the DOC did not have subject matter

jurisdiction to change Petitioner's sentence." Id. Additionally, Petitioner alleges the Board is:

> holding [him] hostage where they have made a blanket requirement in 1996-
> Amendment, that a prisoner who is convicted of a sex offense take the sex
> offenders course, and must, 'admit to his crime', and that violates the petitioner's
> constitutional rights to a fair trial where the plea was entered in 1983 thirteen
> years before the 1996-Amendment, and during that negotiated plea all the
> standards that were required of the petitioner was considered by the sentencing
> Judge in 1983. The petitioner did participate in the sex offenders program where
> it was called 'Nonadmitters' and completed that program in April 1997.
> However, the Parole Board & the DOC staff are violating the sentencing Judge's
> orders in violation of the petitioner's constitutional rights to due process.

Id. at p. 2. (emphasis omitted). For the reasons that follow, the Court will deny the petition.

**Background**

On November 21, 1983, Rambert pled guilty to rape and burglary in the Court of Common Pleas, Philadelphia County. (Doc. 14-1, Ex. A, Sentence Status Summary). He was sentenced by Judge McCrudden to a ten to twenty-five year term of imprisonment, effective June 2, 1983. Id.

On November 10, 1987, while incarcerated for the prior crimes, Rambert was found guilty by Judge Dauer of the Court of Common Pleas, Alleghany County of assaulting another inmate, rioting, and criminal conspiracy. Id. Judge Dauer sentenced Rambert to a six to twenty-five year term of imprisonment, to run consecutively with Rambert's prior sentence. Id.; (Doc. 1, Petition at 19-20; (Doc. 7, Amended Petition at ¶¶ 3, 7). Accordingly, the Department of Corrections (DOC) aggregated Rambert's sentences, resulting in a June 2, 1999 minimum date and a June 2, 2033 maximum date. (Doc. 14-1, Ex. A, Sentence Status Summary at 1).

On April 8, 2011, the Board of Probation and Parole reviewed, and denied, Rambert's application for parole, based on the following:

> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOU ARE DENIED PAROLE/REPAROLE. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:
>
> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
>
> YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT

2

OF CORRECTIONS.

YOUR MINIMIZATION/DENIAL OF THE NATURE AND
CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.

YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S)
COMMITTED.

YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

YOU ARE TO BE REVIEWED IN OR AFTER FEBRUARY, 2013, OR
EARLIER, IF RECOMMENDED BY THE DEPARTMENT OF
CORRECTIONS/COUNTY PRISON STAFF.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE
AND CONSIDER:

WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT
PROGRAM FOR SEX OFFENDERS.

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION
FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD.

YOU MAY FILE AN APPLICATION FOR PAROLE/REPAROLE NO
SOONER THAN 1 YEAR AFTER THE DATE THE LAST DECISION
DENYING PAROLE/REPAROLE WAS RECORDED.

(Doc. 14-1, Ex. B, April 8, 2011 Board decision).

On June 3, 2011, Rambert filed a petition for writ of habeas corpus in the United States

Court for the Eastern District of Pennsylvania, naming David Varano, the Pennsylvania Attorney

General, and the Harrisburg District Attorney as respondents. (Doc. 1). Rambert seeks habeas

relief based on claims that Superintendent Varano is improperly requiring him to serve an

aggregate sentence of sixteen to fifty years, and the decision of the Board to deny him parole

unless he admits that he is a sexual offender and participates in a designated sex offender

treatment program. Id.

3

On July 11, 2011, Rambert amended his petition to correct a computational error. (Doc. 7).

On July 22, 2011, the Eastern District Court transferred Rambert's case to this Court. (Doc. 5).

By Order dated July 28, 2011, the Court issued an order to show cause, directing the Respondents to file an answer to Rambert's petition within twenty days. (Doc. 8). A response and traverse having been filed, the petition is ripe for disposition.

**Discussion**

> ### A. Sentence Calculation

Under Pennsylvania law, the aggregation of consecutive sentences is automatic and mandatory. Anderson v. Board of Probation and Parole, No. 03-4655, 2004 WL 286870, *1 (E.D. Pa. Feb. 12, 2004); Commonwealth ex rel. Smith v. Department of Corrections, 829 A.2d 788 (Pa. Cmwlth. 2003);Gillespie v. Cmmw. Dep't of Corr., 527 A.2d 1061 (Pa. Commw. Ct.1987).

Pursuant to 42 Pa. Cons. Stat. Ann. § 9757, entitled "Consecutive Sentences of Total Confinement for Multiple Offenses:"

> Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court **shall** indicate the minimum sentence to be served for the total of all offenses with respect to which the sentence is imposed. Such minimum sentence **shall** not exceed one-half of the maximum sentence imposed.

(emphases added). "The term 'shall' rather than 'may' imports the mandatory, rather than discretionary, nature of the statute." Gillespie, 527 A.2d at 1065. Where, as in the instant case, a sentencing judge specifies that the sentence imposed shall run consecutively to a defendant's

4

preexisting sentence, but fails to specify the total aggregated minimum sentence as required by

42 Pa. Con. Stat. Ann. § 9757, the aggregation of those consecutive sentences still occurs "by

necessary implication[.]" Id.  Therefore, although Petitioner's sentencing judge failed to order

that Petitioner's second sentence be aggregated with Petitioner's first sentence, that aggregation

still occurred under Pennsylvania law.

Pennsylvania courts have interpreted section 9757 to require "the aggregation and

preservation of the maximum terms of the consecutive sentences ... [because, i]n so doing, both

the minimum and maximum terms of each sentence are preserved." Gillespie, 527 A.2d at 1065

(citations omitted).  Petitioner's first sentence was ten to twenty-five years.  Petitioner's second

sentence, ordered to run consecutively with his first sentence, was six to twenty-five years.  By

operation of section 9757, Petitioner's aggregated sentence was sixteen to fifty years, giving him

a maximum release date in 2033.  This sixteen to fifty year sentence became effective when

Petitioner received his second sentence in 1987. Therefore, Petitioner's argument that the DOC

"did not have subject matter jurisdiction to change Petitioner's sentence", is without merit

because the Department merely corrected their records to accurately reflect Petitioner's lawfully

imposed total aggregated sentence.

### B.     Denial of Parole

It is well-settled that "[t]here is no constitutional or inherent right of a convicted person

to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of

Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  Further, the existence of a

state parole system alone does not create a constitutionally-protected interest. Board of Pardons

v. Allen, 482 U.S. 369, 373 (1987).  Instead, a liberty interest for purposes of parole would only

arise if the state code requires a parole board to make its decision based upon the existence or absence of a particular factor.

The Pennsylvania Probation and Parole Act does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole or reparole prior to the expiration of their maximum terms.[1] Pennsylvania law unambiguously provides that a prisoner is not entitled to release from prison until the expiration of his maximum sentence.[2] Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term. The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole. Although a prisoner is eligible for parole at the end of his minimum term, nothing in Pennsylvania law or

---

[1]See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs.); Rodgers v. Parole Agent SCI–Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Rogers v. Pennsylvania Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd. of Probation and Parole, 152 Pa. Cmwlth. 627, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) (stating, "it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term ... the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 536 Pa. 635, 637 A.2d 295 (Pa. 1993).

[2]A prisoner's sentence is his maximum term. Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984). The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board. Id.

the United States Constitution requires a prisoner to be released at such time.[3]

Petitioner contends that the Board's action in denying his application for parole violated

the Ex Post Facto Clause of the United States Constitution.  U.S. Const. Art. 1, § 10.

Specifically, he alleges that the Board violated the Ex Post Facto Clause by applying the

amended parole guidelines and 1996 amended parole statute, 61 Pa. Stat. § 331.1, both of which

were not in effect at the time he was sentenced.  When Petitioner committed his crime, the

relevant parole statute, 61 Pa. Stat. § 331.1, provided as follows:

> The value of parole as a disciplinary and corrective influence and process is
> hereby recognized, and it is declared to be the public policy of this
> Commonwealth that persons subject or sentenced to imprisonment for crime
> shall, on release therefrom, be subjected to a period of parole during which their
> rehabilitation, adjustment and restoration to social and economic life and
> activities shall be aided and facilitated by guidance and supervision under a
> competent and efficient parole administration, and to that end it is the intent of
> this act to create a uniform and exclusive system for the administration of parole
> in this Commonwealth.

Act 1941, Aug. 6, P.L. 861 § 1 (West 1995).

In 1995, the Board's parole procedures became the subject of strict scrutiny after several

violent criminals previously released on parole by the Board were charged with committing

serious violent offenses.  One of these criminals, Robert "Mudman" Simon, shot and killed a

New Jersey Police Officer during a routine traffic stop three months after his release.  These

events precipitated an intense investigation of Pennsylvania's parole system by the Senate

Judiciary Committee of the Pennsylvania General Assembly, who reported the results of the

investigation to the Governor.  See Stewart v. Pennsylvania Board of Probation and Parole, 714

---

[3]The existence of a state parole system alone does not create a constitutionally-protected
interest.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

A.2d 502, 504 n.1 (citing <u>Chairman's Report</u>: <u>Investigation into the Parole of Robert Simon,</u>

Senate of Pennsylvania Judiciary Committee, 179th Gen. Assembly 1995 Sess. 1–6 (February

1996)). As a result of this investigation, the Judiciary Committee made recommendations that

the emphasis of Pennsylvania's parole philosophy should be changed from prisoner

rehabilitation to the protection of public safety, deterrence of crime, and incapacitation of

criminals. <u>Id</u>.

   In 1995 and again in 1996, the Parole Act was amended to implement the suggested

changes in parole policy for violent offenders. Section 1 of the Parole Act, 61 P.S. § 331.1, was

amended as follows:

> In providing these benefits to the criminal justice system, the board shall first and
> foremost seek to protect the safety of the public. In addition to this goal, the
> board shall address input by crime victims and assist in the fair administration of
> justice by ensuring the custody, control and treatment of paroled offenders.

Amended Dec. 18, 1996, P.L. 1098, No. 164, § 1.

   Also, section 34 of the Parole Act was amended by adding a new section that prohibited

the Board from acting upon a parole application for a violent offender unless the inmate had

served at least one year in a prerelease center. <u>See</u> <u>Myers v. Ridge</u>, 712 A.2d 791, 795–96 (Pa.

Commw. 1998), <u>appeal denied</u>, 742 A.2d 173, 560 Pa. 677 (1999). Also in section 34. 1, the

Legislature added a definition for the term "crime of violence" to include murder of the third

degree, voluntary manslaughter, rape, sexual assault, involuntary deviate sexual intercourse,

robbery, arson, aggravated assault, kidnapping, or a conviction for attempt to commit the

above-listed crimes. <u>Id</u>.

   In addition, several internal changes were implemented with respect to the Board's

procedures for approving parole applications for criminals convicted of violent offenses. One

8

change concerned the number of votes needed to approve a recommendation to grant parole.

Specifically, the revised parole guidelines imposed a requirement for three signatures instead of

two before a violent offender may be approved for release on parole.  The voting requirements

for sex offenders changed from three out of five to five out of nine affirmative votes for parole

to be granted.  In addition, the Board was directed to certify that the rights of victims were fully

complied with whenever the Board approved the parole application for the release of a violent

offender.  Myers, 712 A.2d at 798.

Finally, in 2009, the General Assembly repealed the Parole Act and enacted the Prisons

and Parole Code as set forth in Act. No.2009–33, Aug. 11, P.L. 147, No. 33, § 11(b) effective

date October 13, 2009.  The current Act has been consolidated and is currently found at Sections

6101–6309 of the Prisons and Parole Code, 61 Pa. Cons. Stat. §§ 6101–6153.

Petitioner's Ex Post Facto claims challenge the Board's requirement that he successfully

completed a treatment program for sex offenders, that he be reviewed before his application for

parole can be granted, and the requirement that he receive a favorable recommendation from the

DOC.  In analyzing Petitioner's claims, the Court finds a review of the relevant case law is

necessary.

In Mickens–Thomas v. Vaughn, et al., 321 F.3d 374 (3d Cir. 2003), the Court of Appeals

for the Third Circuit reviewed the 1995 and 1996 amendments to the Pennsylvania Parole Act in

response to a challenge that their application violated the Ex Post Facto clause.  The Third

Circuit Court of Appeals held that the Board's application of the changes made to the

Pennsylvania Parole Act in deciding parole applications violated the Ex Post Facto clause of the

United States Constitution.  Specifically, the Court found that although risks to public safety in

granting parole always had been a consideration in the decisional process, after 1996, the Board "clearly viewed its statutory mandate to require special emphasis on public safety." Id. at 385.

Notwithstanding, the Court of Appeals specifically recognized the applicability of the Pennsylvania Supreme Court plurality decision in Winklespecht v. Bd. of Probation and Parole, 571 Pa. 685, 813 A.2d 688 (2002). In that decision, the Pennsylvania Supreme Court, the final arbiter of the meaning of Pennsylvania law,[4] determined that the 1996 amendments to the parole statute had not worked any substantive change in the parole statute or standards for the Board. As such, the Pennsylvania Supreme Court held that the statutory changes made to the Parole Act in 1995 and 1996 did not violate the Ex Post Facto Clause.

> The rewording of 61 P.S. § 331.1 did not create a substantial risk that parole would be denied any more frequently than under the previous wording, nor did the addition of this language create a new offense or increase the penalty for an existing offense. Although the language concerning "protect[ing] the safety of the public" and "assist[ing] in the fair administration of justice" was added to § 331.1 in 1996, these concepts are nothing new to the parole process and have always been underlying concerns. Both versions of § 331.1 leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases Winklespecht's punishment. Reordering of considerations for necessary decisions within an unchanged penalty do not rise to an Ex Post Facto violation.

Winklespecht, 813 A.2d at 691–2.[5] In Mickens–Thomas, the Court of Appeals determined that the Winklespecht decision:

---

[4]Gruber v. Owens–Illinois Inc., 899 F.2d 1366, 1369 (3d Cir.1990) ("In interpreting state statutes, decisions of the state's highest court are binding upon us. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967)").

[5]In Finnegan v. Pennsylvania Bd. of Probation and Parole, 576 Pa. 59, 838 A.2d 684 (Pa. 2003), a clear majority of the Supreme Court of Pennsylvania re-affirmed the holding of Winklespecht in response to a mandamus action filed in the Commonwealth Court of Pennsylvania.

> made after the Board's actions on Thomas's parole, came too late to alter the
> Board's view of the statutory amendment on the outcome of this case. Not
> having the benefit of the Supreme Court decision, the evidence before us shows
> that the Board interpreted § 331.1 to mandate foremost the consideration of
> public safety. The Board mistakenly construed the 1996 statutory change to
> signify a substantive change in its parole function.

Mickens–Thomas, 321 F.3d at 391.

The Court of Appeals for the Third Circuit since has clarified its holding in

Mickens–Thomas, explaining that the retroactive application of the 1996 Amendments is not a

per se violation of the Ex Post Facto Clause, but the inmate must also establish the second prong

of the ex post facto analysis. See Richardson v. Pennsylvania Bd. of Probation and Parole, 423

F.3d 282, 287–92 (3d Cir. 2005).

> The ex post facto inquiry has two prongs: (1) whether there was a change in the
> law or policy which has been given retrospective effect, and (2) whether the
> offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a
> retroactive change in the law or policy must create a sufficient risk of increasing
> the measure of punishment attached to the covered crimes; a speculative and
> attenuated possibility of increasing the measure of punishment is not enough.

Richardson, 423 F.3d at 287–288 (internal quotation marks, ellipses and citations omitted). The

Court then found Richardson's case distinguishable from Mickens–Thomas.

> We summarize our findings there: (1) We found that the Parole Board relied
> solely on public safety in denying Thomas parole, while disregarding the Parole
> Guidelines, the unanimous recommendations of the Department of Corrections,
> and the evidence of Thomas's rehabilitation; (2) Thomas presented convincing
> evidence that he had a significant likelihood of parole under the pre–1996
> guidelines, but was denied parole under the new policy; and (3) Thomas was able
> to show that all prisoners whose life sentences had been commuted prior to 1996
> had been subsequently paroled.
>
> Mickens–Thomas may be an exceptional case because of the compelling nature
> of the evidence of prejudice. We do not require a petitioner to muster evidence of
> such convincing quality, particularly in the absence of an evidentiary hearing.
> Nevertheless, our precedents require that a petitioner proffer at least some
> evidence of disadvantage to warrant habeas relief.

11

Richardson, 423 F.3d at 293.

The Court of Appeals for the Third Circuit reiterated this holding in Taylor v.

Pennsylvania Bd. of Probation and Parole, 181 Fed. App'x 253, 254 (3d Cir. 2006).

> Taylor concentrates on the first prong of the analysis, and we will assume for
> present purposes that he satisfies that inquiry. However, he must also adduce
> some evidence that this new law or policy disadvantaged him by creating a
> significant risk of increasing his punishment. The mere intuition that stricter
> standards are more likely to lead to an adverse result is insufficient. Rather,
> Taylor must provide such evidence as indications that he would have been a good
> candidate for parole under the old law, comparisons of parole rates for prisoners
> with similar convictions before and after the 1996 amendments, and the extent to
> which the reasons given for denying him parole would not have been considered
> before 1996.
>
> Taylor has made no such showing and, thus, fails the second prong of the ex post
> facto analysis. Accordingly, we will affirm the judgment of the District Court.

Taylor, 181 Fed. App'x at 254–55 (internal quotations and citations omitted).

The Court revisited this issue in Shaffer v. Meyers, 163 Fed. App'x. 111 (3d Cir. 2006),

wherein the petitioner had been convicted of a sexual assault in 1990 and was denied release on

parole in 2004 due to his failure to have completed a sex offender program and the lack of a

favorable recommendation from corrections officials. In its review of this claim, the Court of

Appeals explained as follows:

> ... With regard to the Ex Post Facto Clause, we emphasize that there are two
> prongs to a successful claim: Shaffer must show not only that there has been a
> change in law or policy which has been given retrospective effect but also that its
> retrospective application to him created a real risk of increasing the measure of
> his punishment.
>
> In setting forth his claim, Shaffer reads Mickens–Thomas too broadly, at times
> appearing to interpret that decision as holding that any retroactive application of
> the amended parole statute violates the Ex Post Facto Clause. However,
> Mickens–Thomas prevailed because he clearly satisfied both prongs. In his case,
> the Board had relied solely on public safety in denying parole and disregarded the

parole guidelines, the unanimous recommendations of the Department of Corrections, and evidence of his rehabilitation. Moreover, Mickens–Thomas had presented convincing evidence that he had a significant likelihood of parole under the pre–1996 guidelines and had shown that all prisoner's in his situation (prisoners whose life sentences had been commuted before 1996) had been subsequently paroled. As we noted in Richardson, "Mickens–Thomas may be an exceptional case because of the compelling nature of the evidence of prejudice."

Although we do not require a petitioner to provide evidence which is compelling to the same degree, "our precedents require that a petitioner proffer at least some evidence of disadvantage to warrant habeas relief." Shaffer has not done so. Indeed, it is not even clear that he has met the first prong of the analysis, i.e., shown that the Board used new standards, retroactively applied, in denying him parole. Prima facie it does not seem likely that the criteria cited by the Board in Shaffer's case-participation in a treatment program for sex offenders, the recommendation of the Department of Corrections, Shaffer's conduct record and whether he completed any prescribed programs-would not have been considered by the Board pre-amendment, and Shaffer cites no evidence to persuade us otherwise. But even if we assume that the Board would have used different criteria pre-amendment, Shaffer has not provided adequate reasons to support the contention that application of those criteria would likely have resulted in his release on parole.

Shaffer, 163 Fed. App'x at 113–114 (internal quotations and citations omitted).

The Court expanded this holding in Pleaze v. Klem, 335 Fed. App'x. 168, 170 (3d Cir.

2009). In that case, the petitioner was convicted of robbery on March 29, 1999. On April 25,

2001, the DOC issued a Prescriptive Program Plan recommending that he participate in various

institutional programs, including sexual offender orientation. Petitioner subsequently completed

the recommended programs, including the sexual offender orientation. Following his parole

eligibility date of September 29, 2004, the Board denied him parole based on, inter alia, his

failure to complete additional institutional programs, including sexual offender. Petitioner

argued that the Parole Board violated his rights under the Ex Post Facto Clause by applying to

him the 2000 Sex Offender Treatment statute, 42 Pa. Cons. Stat. § 9718. 1, which requires

prisoners to participate in a DOC program of counseling or therapy to be eligible for parole. The

Court disagreed.

> First, the DOC had the ability to, and did, deny parole to some inmates who failed to undergo sexual offender treatment prior to the passage of § 9718.1. Further, the Parole Board has wide discretion to make decisions regarding parole based on a variety of factors. Although the Board cited Pleaze's failure to complete additional sexual offender programs as a factor in denying him parole (though it never referenced § 9718.1), Pleaze's successful completion of an advanced sexual offender program was one of many factors the Board could consider in evaluating his parole applications. Nothing indicates that the Board intended to retroactively apply the requirements of § 9718.1 to Pleaze or that it made its decision regarding his parole based on improper considerations. The Board never claimed that Pleaze was ineligible for parole by barring him from applying or refusing to consider his application, which is the remedy for failure to comply with § 9718.1.
>
> ...
>
> Even were we to assume that the Parole Board did apply § 9718.1 to Pleaze, his argument still fails because he cannot meet the second factor under <u>Richardson</u>, requiring him to show that he "was disadvantaged by the change" in law. Pleaze carries the ultimate burden of establishing that the measure of punishment itself has changed and he must show that as applied to his own sentence the law created a significant risk of increasing his punishment.
>
> Pleaze argues that although the Parole Board did not explicitly cite § 9718.1, it clearly applied it in denying him parole, and that its retroactive application directly resulted in his increased punishment because but for the statute he would not have been required to take a sex offender program. But a speculative and attenuated possibility of increasing the measure of punishment is not enough of a showing to meet Pleaze's burden.... [U]nlike the prisoner in <u>Mickens–Thomas</u>, Pleaze has not demonstrated that but for § 9718.1 he would have been paroled, or that other similarly situated prisoners were paroled prior to the passage of the statute.

<u>Pleaze</u>, 335 F.3d at 171–72 (internal quotations and citations omitted).

The most recent decision by the Court of Appeals for the Third Circuit is set forth in <u>Newman v. Beard</u>, 617 F.3d 775 (3d Cir. 2010). Newman was found guilty in 1987 of committing two rapes and related sexual offenses and was sentenced to twenty to forty years imprisonment. After he became eligible for parole in 2007, Newman met with a parole hearing examiner for an interview. The hearing examiner noted that Newman had not attended the sex

offender treatment program (SOP) and stated that the Parole Board required the completion of the SOP before parole would be granted. On April 18, 2007, the Board denied Newman's parole application setting forth the following reasons for denying Newman's parole:

> Your minimization/denial of the nature and circumstances of the offense(s) committed.
>
> Your refusal to accept responsibility for the offense(s) committed.
>
> Your lack of remorse for the offense(s) committed.
>
> The negative recommendation made by the Department of Corrections.
>
> Your unacceptable compliance with prescribed institutional programs.
>
> Your need to participate in and complete additional institutional programs.
>
> Your interview with the hearing examiner.
>
> The Parole Board's written decision also stated that at Newman's next interview, the Board will review your file and consider ... whether you have successfully completed a treatment program for sex offenders, whether you have received a favorable recommendation for parole from the Department of Corrections, whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s), and current mental health evaluation to be available at time of review.

Newman, 617 F.3d at 778.

Newman alleged that the Board improperly applied Pennsylvania's Sex Offender treatment statute stating that he was sentenced in 1988 and the statute was not enacted until 2000. The Court assumed that Newman had met the first prong of his Ex Post Facto challenge notwithstanding that the Board's denial did not mention the Sex Offender Treatment Act. Id. at 785. Analyzing Newman's claim in that context, the Court denied relief noting that Newman had not alleged the second prong, i.e., that the statute created a significant risk of increasing his punishment. Id. In this regard, the Court found that Newman had not alleged that he would

have been paroled but for the new statute and that similarly situated inmates were paroled before

the passage of the statute. Id.

> The Supreme Court has recognized that because most offenders will eventually
> return to society, a paramount objective of the corrections system is the
> rehabilitation of those committed to its custody. Inasmuch as rehabilitation is a
> legitimate penological objective and the Supreme Court is satisfied that
> recognition of one's responsibility for past offenses is a critical first step toward
> rehabilitation, Newman cannot show that the Parole Board's alleged retroactive
> application of § 9718.1 created a significant risk of increasing his punishment.[6]
> Accordingly, the District Court properly dismissed his Ex Post Facto claim.

Newman, 617 F.3d at 786.  (internal quotations and citations omitted).

In Petitioner's case, the Board's most recent determination specifically provides the

factors the Board considered in its decision denying Petitioner reparole; namely, the negative

recommendation by the DOC, his minimization of the nature of the offense, and his lack of

remorse. (Doc. 14, Ex. B).  These factors were applicable at the time of Petitioner's criminal

conduct and are all factors rationally related to any parole decision, whether made before or after

1996.  See, e.g., Farmer v. McVey, Civil No. 09–166, 2011 WL 776213, 12 (M.D. Pa. Jan. 24,

2011) (holding that the inmate did not show that the change in the law created an "individualized

disadvantage" for him in securing parole because it was evident that the denial of parole was not

a function of changes in the law, but rather was a product of the inmate's recidivism and poor

risk for parole); Sheffield v. Pennsylvania Dept. of Corrections, Civil No. 07–2046, 2009 WL

210490 (Jan. 26, 2009) (concluding that the Board's denial of reparole request based upon the

negative recommendation of DOC, assessments of the inmate's prior history of parole

---

[6]As noted above, the Parole Board could have legitimately considered Newman's "general
character and history" even under the statute in effect in 1988 when he was sentenced. See 61 P.S. §
331.19 (1988).

supervision failures, and his need to participate in and complete institutional programs did not violate the Ex Post Facto Clause as the inmate failed to show that he had been disadvantaged in any way by the new laws or that he would have been more likely to be granted parole before the new laws were passed); Petty v. Pennsylvania Bd. of Probation and Parole, Civil No. 10–279, 2010 WL 4321601, 11 (E.D. Pa. Oct. 6, 2010) (holding that the mere fact that an inmate was not re-paroled at the conclusion of the back time sentence did not necessarily mean that some sort of "additional punishment" was imposed upon him in violation of the Ex Post Facto Clause as the punishment for his convictions lawfully includes incarceration to the maximum imprisonment date under Pennsylvania law).

Here, Petitioner presents no evidence supporting an inference that he has been disadvantaged in some way by consideration of the 1996 amendments to Pennsylvania's parole law or by the new Sex Offender Treatment law. Specifically, he fails to offer any evidence that he was a good candidate for parole under the criteria in effect before 1996 and makes no statistical showing that inmates convicted of rape and involuntary deviate sexual intercourse were more likely to be paroled before the 1996 and 2000 changes to the legislation. See Richardson, 423 F.3d at 284 (stating that the Pennsylvania Parole Act allows the Board to consider, inter alia, "the prisoner's complete criminal record, conduct while in prison, 'physical, mental [,] and behavior condition and history,' the 'nature and circumstances of the offense committed,' and 'the general character and background of the prisoner'"), quoting 61 Pa. Cons. Stat. § 331.19. Thus, there is no indication that the Board's action in denying Petitioner parole was the result of an illegal application of the Pennsylvania Parole laws. Consequently, he has not demonstrated that the Board, or any member thereof, violated his rights as protected by the

Fourteenth Amendment Due Process Clause or the Ex Post Facto Clause.  The petition for a writ of habeas corpus under 28 U.S.C. § 2254 will be denied.  A separate Order will be issued.

Dated: August 1, 2012

_____
**United States District Judge**

18